# UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY
M.L. KING, JR.  FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH
BANKRUPTCY JUDGE

(973) 645-4693
Fax: (973) 645-2606

**NOT FOR PUBLICATION**

**FILED**

JAMES J. WALDRON, CLERK

**AUG. 22, 2012**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

## LETTER OPINION
## ORIGINAL FILED WITH THE CLERK OF THE COURT

Forman Holt Eliades Ravin & Youngman LLC
David S. Catuogno, Esq.
80 Route 4 East, Suite 290
Paramus, New Jersey  07652
***Counsel for the Trustee***

Lasser Hochman LLC
Richard L. Zucker, Esq.
75 Eisenhower Parkway
Roseland, New Jersey 07068
***Pro se***

Re:    **Monroe Center II Urban Renewal Co., LLC**
       **Case No. 08-32556 (DHS)**

Dear Counsel:

The Court has before it the motion of the Chapter 7 Trustee, Charles M. Forman ("Trustee"), for Debtor Monroe Center II Urban Renewal Company, LLC ("Monroe II")[1] seeking entry of an order disallowing and modifying various proofs of claim pursuant to section 502(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3007.  Among the charges objected to, the Trustee objected to an amended proof of claim in the amount of $569,870.67 filed by Lasser Hochman LLC ("Lasser"), a law firm, on the basis that the firm cannot tie the benefit of its services to the estate and therefore, at least a portion of its claim is

---

[1] Monroe II filed for chapter 11 relief in November 2008.  Subsequently, in March 2009, the case was converted to chapter 7.

Page 2
August 21, 2012

not an obligation of Monroe II.[2]   Lasser opposes the motion arguing that it provided legal services with the understanding that such services were rendered to [only] one client or matter, commonly referred to as "Monroe Center."[3]   (Obj. of Lasser Hochman ("Lasser's Obj."), ¶ 14)

For the reasons that follow, the Trustee's motion is denied with respect to Lasser's proof of claim.  The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984.  This proceeding is a core proceeding pursuant 28 U.S.C. §§ 157(b)(2)(A) and (B).  Venue is proper under 28 U.S.C. § 1409.  The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

Under section 502(a) of the Bankruptcy Code, "[a] claim or interest, proof of which is filed under section 501 . . . , is deemed allowed, unless a party in interest . . . , objects." 11 U.S.C. § 502(a).  Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a properly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim."  An objecting party must then present evidence sufficient to rebut the claim's presumptive validity. *Cornell & Co. v. Seaway Painting (In re Cornell & Co.)*, 229 B.R. 97, 103 (Bankr. E.D. Pa. 1999).  The ultimate burden of proving the claim's validity, however, lies with the creditor.  *Id.* The creditor must then prove the validity of its claim by a preponderance of the evidence.  *See In re Steel Wheels Transp., LLC*, 2009 Bankr. Lexis 998, at *10 (Bankr. D.N.J. Jan. 23, 2009) (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)).  Section 502(b) further provides that "if such objection to a claim is made, the court, . . . shall determine the amount of such claim . . . , and shall allow such claim in such amount, except to the extent that [] such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]"  11 U.S.C. § 502(b)(1).

The Trustee asserts that the instant case involves a distinct parcel of undeveloped real property referred to as "Monroe II."  The Trustee states that the Monroe II parcel, along with several other parcels referred to individually as Monroe I, Monroe III, Monroe IV, and Monroe V (together, the "Monroe Properties") were all "part of an integrated, multi-phase development." (Tr.'s Mot. for an Order Disallowing Modifying and/or Reducing Proofs of Claim ("Tr.'s Mot."), p. 5)  Certain of the entities filed for bankruptcy or lost property to foreclosure.  (*Id.*)  These parcels, the Trustee asserts, were owned by various entities "all of which were under some

---

[2] The Trustee will pay general creditors pro rata from funds on hand which will be a small percentage of the total claims allowed.

[3] Lasser acknowledges that it opened two client-matter numbers for litigation involving Monroe II specifically.  (Lasser's Obj., ¶ 24)  The Trustee does not object to the portion of Lasser's claim allocable to these representations.  However, Lasser argues that it was necessary to name Monroe II rather than Monroe Center because the litigation involved a parcel of land owned by Monroe II, and that this does not undermine Lasser's position in the instant matter.

Page 3
August 21, 2012

degree of common control and management[.]" (*Id.*) The Trustee further notes that "because the Monroe Properties were all part of a proposed multi-purpose development, many parties who believe they may have been owed money by one or another distinct [] entity[], have simply filed a claim in [the] Monroe II case on the erroneous belief that the entities were identical, or that the Monroe II entity would have an obligation to pay[.]" (*Id.* at pp. 5-6) Accordingly, the Trustee argues that various claimants, including Lasser, have failed to demonstrate that their claims represent obligations of Monroe II's bankruptcy estate. Lasser, however, argues that the Trustee's position in fact supports the argument that the Court should disregard the corporate form.

Lasser asserts it was retained by Dilawez Hoda and Gerard Saddell in 2004 "to represent them and their various entities in connection with the development, financing, and leasing" of the Monroe project. (Lasser's Obj., ¶ 12) Lasser alleges that Hoda and Saddell were actively involved "in the activities of all of the Monroe Center entities" and that "there was [] a confused intermingling of activity . . . with a substantial disregard of the separate nature of the corporate entities . . . ." (*Id.* at ¶ 23) Lasser further asserts that the parties involved with the Monroe project and related bankruptcy proceedings, including the Trustee, "treat[ed] the assets and activities of each Monroe Center entity as a single enterprise." (*Id.* at ¶ 16) Consequently, "it was [Lasser's] understanding . . . that [its] services and expenses were being incurred in connection with one matter, namely, Monroe Center." (*Id.* at ¶ 14) As a result, Lasser argues that the Court should disregard the corporate form to find that Monroe II is obligated on Lasser's proof of claim.

New Jersey law recognizes "the fundamental proposition[] that a corporation is a separate entity from its shareholders . . . and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." *State, Dept. of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473, 500 (1983) (internal citation omitted). Typically, courts will not pierce the corporate veil "[e]xcept in cases of fraud, injustice, or the like . . . ." *Id.* (internal citations omitted); *see Richard A. Pulaski Constr. Co. v. Air Frame Hangars, Inc.*, 195 N.J. 457, 472-73 (2008). The remedy is equitable in nature. That is, it seeks to address "the fundamental unfairness [that] will result from a failure to disregard the corporate form[,]" rather than to "impos[e] legal liability[.]" *Burstein v. Harry M. Stevens, Inc.*, 387 N.J. Super. 160, 199 (App. Div. 2006), *certif. denied*, 189 N.J. 429 (2007) (quoting *Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 193) (internal quotation marks omitted); *see State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 679 (D.N.J. 2009) (same). "[T]he party seeking an exception to the fundamental principle that a corporation is a separate entity from its principal bears the burden of proving that the court should disregard the corporate entity." *Tung v. Briant Park Homes, Inc.*, 287 N.J. Super. 232, 240 (App. Div. 1996).

To pierce the corporate veil, a party must establish: "1) that the [corporation] was dominated by the [principal or] parent corporation, and 2) that adherence to the fiction of

Page 4
August 21, 2012

separate corporate existence would perpetrate a fraud or injustice, or otherwise circumvent the law." *Burstein*, 387 N.J. Super. at 199-200 (citing *Ventron Corp.*, 94 N.J. at 500-01); *see Mall at IV Group Props., LLC v. Roberts*, 2005 U.S. Dist. Lexis 31860, at *8 (D.N.J. Dec. 8, 2005) (holding that to pierce the corporate veil: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.") (citation omitted). The usual veil-piercing case requires a fact-sensitive analysis focusing on the extent to which a corporation was dominated by its parent or principal. Courts typically consider whether a corporation was undercapitalized, failed to observe corporate formalities, did not keep adequate records, and the like. *See id.* at 200. Where a corporation is a façade or "was established to defraud its creditors or other improper purpose such as avoiding the risks known to be attendant to a type of business[,]" courts will likely disregard form to hold the relevant parties accountable. *Id.* at 200-01 (quoting *Nat'l Elevator Indus.*, 332 F.3d at 97). Lasser, however, does not argue that Monroe II was a sham or that it was an instrument of fraud.[4]

Instead, Lasser argues that all Monroe entities were alter egos of each other; pointing to various statements of the Trustee that the Monroe Properties were "an integrated, multi-phase development. . . . all of which were under some degree of common control and management." (Lasser Obj., ¶ 23) Further, Lasser alleges that the actions of Hoda and Saddell, intentional or not, created the understanding that services were being provided to the project as a single enterprise rather than to its constituent entities. Lasser relies on *In re Plantation Realty Trust*, 232 B.R. 279 (D. Mass. 1999), which construes Massachusetts law, to support its position.

In *Plantation Realty*, the debtor entity purchased contiguous parcels of land for the purpose of building a housing development. The debtor created Sutton Hills Golf Club, Inc. ("Sutton Hills"), a separate corporation, to "develop and operate a golf course and club" on a particular parcel, which Sutton Hills would lease from the debtor. Responding to an advertisement, the plaintiff signed a club membership contract – which made no reference to the debtor – with Sutton Hills and paid initiation fees. When the project fell through, the plaintiff requested a refund of his initiation fees, but none was provided. The plaintiff filed a claim in the debtor's bankruptcy case. The trustee objected arguing that the claim did not represent an obligation of the debtor as the plaintiff contracted with Sutton Hills. The court, however, overruled the trustee's objection and pierced the corporate veil to allow the plaintiff's claim.

The *Plantation Realty* court noted that the record did not include evidence establishing, among other things, the entity's capital structure, recognition of corporate formalities,

---

[4] Although Lasser alleges fraud in passing, no evidence was submitted to support the allegations. (*See* Lasser's Obj., ¶ 23) In the Court's view, Lasser's position is that Hoda and Saddell, among others, treated and represented that the Monroe project was essentially a single enterprise and themselves did not recognize any distinction among the various entities involved in the project.

Page 5
August 21, 2012

transactions between the entities and principals, or corporate record keeping.  Still, through testimony the plaintiff demonstrated that one of the debtor's principals "actively and directly participated in the affairs of both entities, 'exercising some form of pervasive control' over each[,]" in addition to making "representations which justifiably caused confusion regarding how title to the golf course land was held." *Id*. at 282-83.  Ultimately, the court found veil piercing appropriate "where an individual with pervasive control of multiple entities creates an atmosphere of confusion relative to the assets and activity of each, to the detriment of a third party dealing with what appears to be a single enterprise." *Id*. at 284.

The Trustee distinguishes the case by arguing that, unlike the plaintiff in *Plantation Realty*, a consumer, Lasser is an experienced and sophisticated law firm.  Though Lasser's experience and sophistication is relevant, this does not end the inquiry. *Stochastic Decisions, Inc. v. DiDomenico*, 236 N.J. Super. 388, 393 (App. Div. 1989) (upholding trial court's finding that a corporation held itself out as "one and the same" as a related corporation and that an insurance broker relied on this information though he understood that separate entities were involved). Lasser alleges that it was its "understanding, as well as that of [its] clients, that [] services and expenses were being incurred in connection with one matter, namely, Monroe Center." (Lasser's Obj., ¶ 14)  Indeed, the Trustee's filings in connection with this motion and throughout the case reflect a common understanding that the Monroe Properties were part of single project, and to some degree substantiate Lasser's argument.  Moreover, New Jersey law does not make fraud a prerequisite to piercing the corporate veil.  Instead, New Jersey courts often require a showing of only "equitable fraud." *Walensky v. Jonathan Royce Intern., Inc.*, 264 N.J. Super. 276, 283 (App. Div. 1993).  "This includes 'all acts, omissions or concealments which involve a breach of a legal or equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an undue or unconscientious advantage is taken of another.'" *Id*. (quoting *MacFadden v. MacFadden*, 49 N.J. Super. 356, 360 (App. Div. 1958), *certif. denied*, 27 N.J. 155 (1958)); *see Erickson v. Leonard*, 2008 N.J. Super. Unpub. Lexis 743, at *18 (App. Div. Mar. 18, 2008) (stating that "fraud or injustice in the specific transaction between the party seeking to pierce the corporate veil and the corporation is not always required."); s*ee also Sendar v. State, Dept. of Human Services*, 230 N.J. Super. 537, 550 (App. Div. 1989) (citing *Ventron Corp.* for "New Jersey's 'fraud or injustice' rule").

While case law makes clear that the equities of the case dictate whether the remedy is appropriate merely demonstrating common ownership or common management is not enough. *Stochastic Decisions*, 236 N.J. Super. at 394.  In *Stochastic Decisions*, the Appellate Division endorsed the Massachusetts Supreme Court's ruling in *My Bread Baking Co. v. Cumberland Farms Inc.*, 353 Mass. 614 (1968), which held that:

> additional facts may be such as to permit the conclusion that an agency or similar relationship exists between the entities. Particularly is this true (a) when there is active and direct participation by the representatives of one corporation, apparently

Page 6
August 21, 2012

>exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the inter-corporate relationship, or (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting. *In such circumstances, in imposing liability upon one or more of a group of 'closely identified' corporations, a court 'need not consider with nicety which of them' ought to be held liable 'for which the plaintiff deserves payment.'*

*Stochastic Decisions*, 236 N.J. Super. at 394 (quoting *My Bread Baking*, 353 Mass. at 619). While neither *Plantation Realty* nor *My Bread Baking* is dispositive, they provide some insight. In each, corporations were not necessarily instrumentalities or shams used to perpetrate fraud, rather, the persons operating and dealing with the corporations simply did not recognize, or concern themselves with, separate corporate identities.

Here, there is no dispute that Monroe II, the Monroe Properties, and their related entities were viewed as and represented to be part of a single project. At the very least, "there [was] a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard [for] the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives [were] acting." *My Bread Baking*, 353 Mass. at 619. The Court will not permit the estate to avoid liability on a claim by invoking the corporate form, which until now has largely been ignored by Monroe II's principals, the Trustee, and others involved with the Monroe project. "[O]ne who accepts the benefits of incorporation must also accept the burdens that flow from the use of a corporate structure." *Lyon v. Barrett*, 89 N.J. 294, 300 (1982); *see Erickson*, 2008 N.J. Super. Unpub. Lexis 743, at *16-18 (stating "[m]isuse of the corporate form may also be evidenced by disregard of the form."). Though before the Court there is no evidence of fraud, wrongdoing, or abuse in a particular transaction, the Court must look beyond the corporate form to prevent injustice. *See Walensky*, 264 N.J. Super. at 283 (stating that "a court of equity is always concerned with substance and not merely form, and thus, it will go behind the corporate form where necessary to do justice.") (quoting *Fortugno v. Hudson Manure Co.*, 51 N.J. Super. 482, 500-01 (App. Div. 1958)). To countenance the Trustee's argument at this stage could deprive Lasser of an opportunity to pursue its general creditor claim against any Monroe-related debtor entity. A claim the Trustee all but admits is otherwise valid. Clearly, Lasser provided substantial legal services to advance or protect the interests of the Monroe project; thus, Lasser's services inured to the benefit of Monroe II, the Monroe Properties, and the project as a whole. Thus, the Trustee's motion is denied with respect to Lasser's claim.

Page 7
August 21, 2012


An Order in conformance with this Opinion has been entered by the Court and a copy is attached.[5]

Very truly yours,

*s/  Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure

---

[5] Nothing in this Opinion or the accompanying Order shall be construed to affect or alter the rights of the Trustee against any claimant or party other than Lasser.